UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

RICARDO MUIR,

                            Petitioner,            07 Civ. 7573 (JGK)

            - against -                            <u>MEMORANDUM OPINION</u>
                                                   <u>AND ORDER</u>
THE PEOPLE OF THE STATE OF NEW YORK,

                            Respondent.
_____

JOHN G. KOELTL, District Judge:

    The petitioner, Ricardo Muir, brings this pro se petition

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  On

June 27, 2005, the petitioner was convicted after a bench trial

in New York State Supreme Court, Bronx County, of two counts of

Robbery in the First Degree, one count of Robbery in the Second

degree, and one count of Criminal Possession of a Weapon in the

_____

[1]    Although the petitioner has been deported by the Immigration and
Naturalization Service ("INS"), the respondent has not argued that his
deportation renders this petition moot.  <u>See</u> <u>Perez v. Greiner</u>, 296 F.3d 123,
125-26 (2d Cir. 2002) (finding that a habeas corpus petition challenging a
criminal conviction is rendered moot only if it is shown that there is no
possibility that any collateral legal consequences will be imposed on the
basis of the challenged conviction).  The petitioner was removed for
overstaying his B-2 visa, which expired on June 10, 2000.  As a result, the
petitioner cannot reenter the United States for a ten-year period without
permission from the United States Attorney General.  <u>See</u> 8 U.S.C. §
1182(a)(9)(A)(ii)(I), (iii).  In the absence of any other impediment, the
petitioner could return to the United States after that ten-year period.  If,
however, the present conviction stands, the petitioner will be barred from
ever reentering the United States without the permission of the United States
Attorney General.  <u>See</u> 8 U.S.C. § 1182(a)(9)(A)(ii)-(iii).  Such a barrier to
reentry would suffice to prevent Muir's petition from being mooted.  <u>See</u>
<u>Perez</u>, 296 F.3d at 126 (finding that an "alien's 'inability to reenter and
reside legally in the United States with his family is a collateral
consequence of his deportation because it is clearly a concrete disadvantage
imposed as a matter of law'" (quoting <u>Tapia Garcia v. INS</u>, 237 F.3d 1216,
1218 (10th Cir. 2001))).

Second Degree.  The petitioner was sentenced to five years imprisonment for each count, to run concurrently.

The petitioner appealed to the New York State Supreme Court, Appellate Division, First Department, which, on January 18, 2007, unanimously affirmed the petitioner's judgment of conviction.  People v. Muir, 826 N.Y.S.2d 891 (App. Div. 2007). The petitioner's application for leave to appeal to the New York State Court of Appeals was denied on March 30, 2007.  People v. Muir, 866 N.E.2d 461 (N.Y. 2007).

The petitioner subsequently moved in the New York Supreme Court, Bronx County, to vacate the judgment against him pursuant to New York Criminal Procedure Law § 440.10, alleging ineffective assistance of trial and appellate counsel.  In an order dated November 24, 2008, the court denied the petitioner's motion.

In this petition, the petitioner challenges his conviction on two grounds.  First, the petitioner alleges that the Appellate Division erroneously rejected his sufficiency of the evidence claim.  Second, he alleges that both his trial and appellate counsel failed to provide adequate and effective assistance of counsel in violation of the Sixth and Fourteenth Amendments.  For the reasons stated below, the petition for a writ of habeas corpus is denied.

I.


A.

The record reflects the following relevant facts.  On June
8, 2004, at approximately 11:40 p.m., the victim, Kerry
Gonzalez, his girlfriend, Melecia Williams, and her two-year-old
daughter stopped by Mr. Gonzalez's grandmother's house in the
Bronx.  (Tr. 4-6.)  While standing outside the house, the
petitioner called Mr. Gonzalez over to him on the other side of
the street.  (Tr. 9.)  Ms. Williams testified that when Mr.
Gonzalez returned to his vehicle he was upset and told her that
the petitioner had asked him for money.  (Tr. 11, 37.)

The petitioner approached the vehicle and asked Mr.
Gonzalez for money for an outstanding debt Mr. Gonzalez owed
him.  (Tr. 9-11.)  When Mr. Gonzalez told the petitioner that he
did not have any money, the petitioner became aggressive,
telling him that he knew he had money because of the way he
dressed.  (Tr. 132.)  Mr. Gonzalez remained at the car and the
petitioner walked back across the street.  (Tr. 13, 133, 182.)

At this point, Ms. Williams wanted to leave because she was
afraid.  (Tr. 13.)  Mr. Gonzalez, however, wanted to wait for
his friend, Lincoln Maxwell, whom he had seen earlier and who
was bringing him something from the convenience store.  (Tr. 14,
177-78.)  Mr. Maxwell walked over to the driver's side of Mr.

Gonzalez's car and the two men began talking about a block party. (Tr. 14-15, 72.)  As the men were talking, the petitioner approached the driver's side window and came between Mr. Gonzalez and Mr. Maxwell. (Tr. 73, 75, 81.)  The petitioner touched and hit Mr. Gonzalez's face, forehead, and baseball hat, and reached through the window to grab Mr. Gonzalez's chain necklace. (Tr. 15-16, 73, 135-36.)  The petitioner commented that Mr. Gonzalez must have money because of the chain he was wearing. (Tr. 138.)

The petitioner also grabbed around Mr. Gonzalez's waist where Mr. Gonzalez's cell phone was attached with a clip. (Tr. 17, 137-38.)  Mr. Maxwell grabbed the petitioner's hand to try to stop him from hitting Mr. Gonzalez, but the petitioner told Mr. Maxwell to let him go. (Tr. 73-74.)  When Mr. Maxwell let go of the petitioner's hand, the petitioner pulled his own shirt up near the waist area, and Mr. Maxwell ran off. (Tr. 74-75.)

The petitioner opened the driver's side door and pulled Mr. Gonzalez out of the car by his chain. (Tr. 17, 192-93, 207.)  Ms. Williams went around the back of the vehicle toward the driver's side to get her daughter out of the car and saw the petitioner holding a gun in his hand and pointing it at Mr. Gonzalez. (Tr. 17-19.)  The petitioner was pointing his gun at Mr. Gonzalez near his waist, and as the two men were struggling, the gun went off. (Tr. 19, 142-43.)  After the gun went off,

4

the petitioner ran away.  (Tr. 19.)  Mr. Maxwell had gone to
call 911 and returned to Mr. Gonzalez's car.  (Tr. 95.)  When
the police arrived, Mr. Maxwell and Ms. Williams spoke with them
and told them what had happened.  (Tr. 96-97.)  An ambulance
took Mr. Gonzalez to Jacobi Medical Center where he had two
surgeries and stayed for a week and four days.  (Tr. 146.)

During the petitioner's trial, the credibility of the
People's witnesses was thoroughly explored on cross-examination.
On cross-examination of Ms. Williams, trial counsel questioned
her about an inconsistency between her trial testimony and what
she told the police the night of the incident.  (Tr. 40-41.)  In
order to call into question Ms. Williams's credibility, trial
counsel questioned the witness about the nature of her
relationship with Mr. Gonzalez since the incident occurred.  Ms.
Williams testified that she and Mr. Gonzalez had since broken up
and he had made threats against her and her family, but that
these threats did not cause her to testify untruthfully.  (Tr.
30-31.)

The petitioner's trial counsel also explored
inconsistencies between the testimony of the People's witnesses
and the testimony of the petitioner.  The petitioner concedes
that he approached Mr. Gonzalez to ask him for money, but
testified that he was seeking to embarrass Mr. Gonzalez into
paying his debt.  (Tr. 233.)  The petitioner also testified that

it was Mr. Gonzalez that had the gun, and that the petitioner noticed it before he approached Mr. Gonzalez in his car.  (Tr. 234.)  The petitioner contended that when he went to grab the gun, he accidentally grabbed Mr. Gonzalez's waist and his phone, but he did not know at the time that he had grabbed a phone. (Tr. 235.)  After the men struggled over the gun, the petitioner claimed he ran off with both the gun and the phone, and stashed the gun under some bushes.  (Tr. 237-39.)

The trial court, sitting as the trier of fact, found that the incident transpired because the two men knew each other and Mr. Gonzalez owed the petitioner money.  (Tr. 369-70.)  The court concluded that Mr. Gonzalez had disrespected the petitioner numerous times by not repaying his debt, and that on the night of the incident, the petitioner approached Mr. Gonzalez's car with a gun in order to get something of value from him.  (Tr. 370-71.)  The trial court found that a struggle ensued between the petitioner and Mr. Gonzalez, causing the gun to go off and injure Mr. Gonzalez's leg.  (Tr. 371.)  At this point, the court found that the petitioner ran off with Mr. Gonzalez's cell phone.  (Tr. 371.)  The trial court placed substantial weight on Mr. Maxwell's testimony because he concluded that "the last place that Mr. Maxwell wanted to be in this entire world" was testifying at the trial.  (Tr. 371.)  The court found the petitioner guilty of the charges.

B.

The petitioner appealed his conviction to the Appellate Division, First Department, and argued that the verdict was against the weight of the evidence.  In an opinion dated January 18, 2007, the Appellate Division unanimously rejected the petitioner's claims.  People v. Muir, 826 N.Y.S.2d 891 (App. Div. 2007).  The court held that there was "no basis for disturbing the [trial] court's determinations concerning credibility" and that "[t]he evidence warranted the conclusion that [the] defendant acted with larcenous intent when he took the victim's property after threatening him with a firearm." Id. at 891.  On March 30, 2007, the petitioner's application for leave to appeal to the New York Court of Appeals was denied. People v. Muir, 866 N.E.2d 461 (N.Y. 2007).

On July 19, 2007, the petitioner filed a pro se petition for a writ of habeas corpus in this Court, arguing the same claims he advanced on direct appeal.  In a reply to the respondent's declaration in opposition to his habeas petition, the petitioner raised new claims not raised in his initial petition.  As a result, the Court ordered the petitioner to file a motion for leave to amend his petition in order to raise these new claims.  (Mem. Op. & Order, Feb. 8, 2008.)  The Court construed the petitioner's motion requesting leave to amend as a motion to stay the petition in order to allow the petitioner to

exhaust his claims in state court and granted the motion to stay.  (Id.)

In a pro se motion dated May 29, 2008, the petitioner moved in the New York Supreme Court, Bronx County, to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10. The petitioner argued that he was denied the right to effective assistance of counsel during trial and on appeal because counsel failed to present viable defenses on his behalf.

In an order dated November 24, 2008, the court denied the petitioner's motion to vacate his conviction.  Citing New York Criminal Procedure Law § 440.10(2)(a) and (c), the court ruled that "[a]ll of the claims . . . raised by [the petitioner] in his present motion before this Court could have been raised and reviewed in [the petitioner's] direct appeal to the Appellate Division, First Department which he simply failed to do." (Decision and Order, Nov. 24, 2008.)  A review of the petitioner's documents failed to provide the court with any "justifiable reason" for the petitioner's failure to raise these claims in his direct appeal and therefore the petitioner's new claims were procedurally barred.  (Id.)

The petitioner sought leave to appeal from that order, and on May 19, 2009, the Appellate Division denied petitioner's application.

II.

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief to a state prisoner on a claim that was adjudicated on the merits in state court only if it concludes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); see also Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006); Bradley v. Burge, No. 06 Civ. 0040, 2007 WL 1225550, at *4 (S.D.N.Y. Apr. 19, 2007).

A state court decision is contrary to clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" the Supreme Court's result. Williams v.  Taylor, 529 U.S. 362, 405 (2000); see also Jones v. Walsh, No. 06 Civ. 225, 2007 WL 4563443, at *4 (S.D.N.Y. Dec. 27, 2007).

A state court decision involves "an unreasonable application of . . . clearly established Federal law" when the

state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case . . . ." Jones, 2007 WL 4563443, at *5 (quoting Williams, 529 U.S. at 407-08). To meet that standard, "the state court decision [must] be more than incorrect or erroneous . . . [it] must be objectively unreasonable." Jones, 2007 WL 4563443, at *5 (quoting Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). "[I]t is well established in [this] circuit that the objectively unreasonable standard of § 2254(d)(1) means that [a] petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." Cotto v. Herbert, 331 F.3d 217, 248 (2d Cir. 2003) (internal quotation marks omitted); see also Jones, 2007 WL 4563443, at *5.

Because the petitioner is proceeding pro se, his petition is "read liberally and should be interpreted 'to raise the strongest arguments that [it] suggest[s].'" Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)); see also Faison v. McKinney, No. 07 Civ. 8561, 2009 WL 4729931, at *4 (S.D.N.Y. Dec. 10, 2009).

A.

The petitioner's first claim alleges that the evidence was not legally sufficient to support a conviction. The petitioner

claims that the prosecution did not prove beyond a reasonable doubt the elements of Robbery and Criminal Possession of a Weapon.

A petitioner challenging the sufficiency of the evidence supporting a conviction must overcome a "very heavy burden." Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir. 1995). A reviewing court must view "the evidence in the light most favorable to the prosecution," and may only grant habeas relief if the petitioner has shown that "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 324 (1979); see also Hawkins v. West, 706 F.2d 437, 439 (2d Cir. 1983). A reviewing court must defer to the trial court in making "assessments of the weight of the evidence or the credibility of witnesses" and construe "all possible inferences that may be drawn from the evidence" in the prosecution's favor. Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996).

In reviewing the legal sufficiency of the evidence of a state conviction, this Court looks first to state law to determine the elements of the crime. Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999). Under the New York Penal Law, a person is guilty of Robbery in the First Degree when "he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he . .

11

. [c]auses serious physical injury" to a non-participant, or
"[i]s armed with a deadly weapon."  N.Y. Penal Law § 160.15(1)-
(2).  Under the New York Penal Law, a person is guilty of
Robbery in the Second Degree when "he forcibly steals property
and when . . . [i]n the course of the commission of the crime or
of immediate flight therefrom, he . . . [c]auses physical
injury" to a non-participant, or "[d]isplays what appears to be
a . . . firearm."  N.Y. Penal Law § 160.10(2)(a)-(b).
Additionally, under the New York Penal Law, a person is guilty
of Criminal Possession of a Weapon in the Second Degree when
"with intent to use the same unlawfully against another, such
person . . . possesses a loaded firearm."  N.Y. Penal Law §
265.03(1)(b).

Viewed in the light most favorable to the prosecution, the
evidence produced at trial was sufficient for a rational trier
of fact to find beyond a reasonable doubt that the petitioner
approached the car with a gun to try to force Mr. Gonzalez to
give him something of value.  At trial, three witnesses
testified that the petitioner approached Mr. Gonzalez's car in
order to collect on an outstanding debt and that he had a gun.
The trial court placed substantial weight on the prosecution's
witnesses, especially Mr. Maxwell, who was present when the
petitioner approached Mr. Gonzalez in his car.  Although the
petitioner later challenged the credibility of the prosecution's

witnesses, the Appellate Division reasonably found that there was no basis for disturbing the court's determinations concerning credibility.  See Faison, 2009 WL 4729931, at *5.

The petitioner has not established that the Appellate Division's determination was contrary to, or based on an unreasonable application of, clearly established federal law.


B.

The petitioner's second claim alleges that he was denied effective assistance of trial and appellate counsel.  The claim of ineffective assistance of trial counsel was raised in a New York Criminal Procedure Law § 440.10 petition and was rejected on procedural grounds because it should have been raised on direct appeal.  Therefore, the claim of ineffective assistance of trial counsel should be dismissed as procedurally barred. Additionally, the claim of ineffective assistance of appellate counsel should have been raised by writ of error coram nobis to the Appellate Division.  It was not, and is therefore unexhausted.  See Rolle v. West, No. 05-CV-591, 2006 WL 2009101, at *2 (E.D.N.Y. July 17, 2006) (citing Garcia v. Scully, 907 F. Supp. 700, 706-07 (S.D.N.Y. 1995)) (noting that a coram nobis petition is the only way to exhaust a claim of ineffective assistance of appellate counsel); see also Williams, 2010 WL

768885, at *12.  Thus, the petition is mixed and has a procedurally defaulted claim along with an unexhausted claim.

When a court is presented with a habeas petition that includes both exhausted and unexhausted claims, it has the power to stay all the claims and allow the petitioner to return to state court to litigate the unexhausted claims.  See Rhines v. Weber, 544 U.S. 269, 277 (2005).  However, 28 U.S.C. § 2254(b)(2) provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  If the unexhausted claims are "plainly meritless," the district court should dismiss those claims on the merits.  Rhines, 544 U.S. at 277; see also Williams, 2010 WL 768885, at *13.  For the reasons discussed below, the petitioner's claim is meritless and his petition for habeas corpus should be denied.

1.

The state trial court relied upon a procedural bar to dismiss the claims the petitioner raised in his post-conviction motion alleging ineffective assistance of trial counsel, including claims that defense counsel failed to address (1) an alleged defect in jurisdiction based upon the felony indictment; (2) the People's presentation of the same charges twice before

the grand jury; (3) the procedure of identifying the defendant employed by Detective Sikorski; and (4) a violation of the defendant's right to a speedy trial.  The state court rejected the claims because it found that they were claims apparent on the face of the record and thus should have been raised on direct appeal.[2]  Here, the petitioner's constitutional claim alleging ineffective assistance of trial counsel on the same grounds is procedurally barred because the state court's rejection of his claim pursuant to New York Criminal Procedure Law § 440.10 is an independent and adequate state law ground prohibiting review.  See Colon v. New York, No. 08 Civ. 0170, 2009 WL 1116478, at *2 (S.D.N.Y. Apr. 27, 2009) ("[E]ven when a petitioner presents a colorable federal constitutional claim, federal habeas review is barred if the claim was denied by a state court on a state procedural ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision.") (quoting Harris v. Reed, 489 U.S. 255, 260-61 (1989)); see also Faison, 2009 WL 4729931, at *10.

---

[2]    New York Criminal Procedure Law § 440.10(2)(c) provides in relevant part that "the court must deny a motion to vacate a judgment when . . . [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him."

It is well settled that where "a state prisoner has
defaulted his federal claims in state court pursuant to an
independent and adequate state procedural rule, federal habeas
review of the claims is barred unless the prisoner can
demonstrate cause for the default and actual prejudice as a
result of the alleged violation of federal law, or demonstrate
that failure to consider the claims will result in a fundamental
miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750
(1991); see also Lee v. Kemma, 534 U.S. 362, 375 (2002); Cotto
v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003); Faison, 2009 WL
4729931, at *10.

In this case, the court explicitly relied on an independent
state procedural ground in rejecting the petitioner's claim.
Indeed, the Court of Appeals for the Second Circuit has found
that the failure to raise a claim on direct appeal that appeared
on the face of the record is a procedural bar under New York law
and, therefore, constitutes an independent and adequate state
ground for the rejection of the petitioner's claim. See Levine
v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995); see
also Faison, 2009 WL 4729931, at *10. Accordingly, for this
Court to grant habeas relief on a defaulted claim, the
petitioner must demonstrate either (1) cause for and prejudice
from the default, or (2) that a fundamental miscarriage of
justice will result if this Court fails to hear the federal

16

claim.  See Colon, 2009 WL 1116478, at *3 (collecting cases);
see also Faison, 2009 WL 4729931, at *10.

The petitioner can demonstrate cause only if he "can show
that some objective failure external to the defense impeded
counsel's efforts to comply with the State's procedural rule."
Murray v. Carrier, 477 U.S. 478, 488 (1986).  This cause "must
be something *external* to the petitioner, something that cannot
fairly be attributed to him."  Coleman, 501 U.S. at 753.  While
examples of such cause do include attorney error, "[a]ttorney
error short of ineffective assistance of counsel does not
constitute cause for a procedural default."  Murray, 477 U.S. at
492; see also Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001).
To complete the cause and prejudice test, the petitioner must
also establish that the ineffective assistance of counsel at
trial caused him actual prejudice.  To establish actual
prejudice, a petitioner must show that the constitutional
violation alleged "worked to his actual and substantive
disadvantage, infecting his entire trial with error of
constitutional dimensions."  United States v. Frady, 456 U.S.
152, 170 (1982); see also Faison, 2009 WL 4729931, at *11.

The petitioner has failed to establish either cause or
actual prejudice to excuse his failure to comply with the state
procedural bar.  Notably, he has failed in his papers to allege
any cause for his failure to raise these claims on direct

appeal, where the petitioner was represented by counsel.  The
petitioner also cannot demonstrate any actual prejudice.  All
four of the petitioner's claims are without merit.

The petitioner claims that the felony complaint against him
was defective because it lacked supporting depositions and,
therefore, the court lacked jurisdiction to prosecute him.
However, the court did have jurisdiction over the petitioner
because the felony complaint was superceded by an indictment.
See N.Y. Crim. Proc. Law § 10.20(1)(a) ("Superior courts have
jurisdiction over all offenses [including] [e]xclusive trial
jurisdiction of felonies.").

The petitioner also claims that counsel should have
objected to the People's re-presentment of its case to the grand
jury.  However, the prosecutor was granted leave to present its
case to a second grand jury so that a previously unavailable
witness could testify.  (See Decl. in Opp'n Ex. 2, Oct. 2009.)
This procedure was authorized by state law.  See N.Y. Crim.
Proc. Law § 190.75(1), (3).  Trial counsel cannot be held
ineffective for failing to raise a meritless argument.  See
United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995)
("[T]he failure to make a meritless argument does not rise to
the level of ineffective assistance.").

The petitioner also contends that trial counsel was
ineffective for failing to object to the identification

procedure used by Detective Sikorski.  After the detective
showed Mr. Gonzalez a photo of the petitioner, Mr. Gonzalez
confirmed that the petitioner was the person who shot him and
that he knew him as "Ricky."  (Decl. in Opp'n. Ex. 3, Oct.
2009.)   Furthermore, there was no question as to identification
because the petitioner himself testified that he not only knew
Mr. Gonzalez, but also knew that he had family on Seymour Avenue
and that he frequently saw Mr. Gonzalez on the block.  (Tr. 225-
27.)  In addition, the petitioner testified that the altercation
resulted from Mr. Gonzalez's borrowing money from him and
failing to pay it back.  (Tr. 227-28.)  Therefore, trial counsel
had no reason to challenge the confirmatory identification
procedure, and his failure to raise a meritless claim does not
render his assistance ineffective.

The petitioner's final claim is that trial counsel failed
to file a speedy trial motion.  However, there was no speedy
trial violation.  The petitioner was arrested on June 9, 2004
and his trial began less than one year later, on May 31, 2005.
This time period is not extensive, especially in light of the
fact that the petitioner was released on his own recognizance
and remained at liberty up until and throughout the trial.  See
Smith v. La Clair, 353 F. App'x 486, 488 (2d Cir. 2009); see
also Flowers v. Warden, 853 F.2d 131, 133 (2d Cir. 1988) (noting

that "17 month delay" is "considerably shorter than those in other cases where we have found no speedy trial violation.").

Moreover, there is nothing to indicate that the delay caused the petitioner any prejudice, nor does the petitioner assert that the delay was due to the prosecution's inaction. See La Clair, 353 F. App'x at 488 ("[C]ourts generally have been reluctant to find a speedy trial violation in the absence of genuine prejudice." (citing United States v. Jones, 129 F.3d 718, 724 (2d Cir. 1997))). Thus, trial counsel's failure to make a speedy trial motion cannot render his assistance ineffective where the motion would have been meritless.

The second exception to the independent and adequate state grounds doctrine also provides no basis for relief for the petitioner because there is no reason to conclude that the petitioner is actually innocent. Therefore, this is not "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent," and that would constitute a "fundamental miscarriage of justice" and therefore excuse his failure to meet the requirements of New York's preservation policy.  Murray, 477 U.S. at 495-96; see also Faison, 2009 WL 4729931, at *13.

Accordingly, this set of the petitioner's constitutional claims alleging ineffective assistance of counsel are denied because the state court's rejection of them rests on an

independent and adequate state ground, the exceptions to that doctrine do not apply, and the claims are, in any event, without merit.

2.

The petitioner also contends that he was denied the effective assistance of appellate counsel because his appellate counsel did not raise the four aforementioned claims on appeal. The petitioner, however, has not exhausted this claim in state court because he did not file a coram nobis petition.  In any event, the petitioner's claim of ineffective assistance of appellate counsel is without merit and should be denied.

"Although the Strickland test was formulated in the context of evaluating a claim of ineffective assistance of trial counsel, the same test is used with respect to appellate counsel." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). Therefore, in order for the petitioner to prevail on his ineffective assistance of appellate counsel claim, he must demonstrate that appellate counsel's performance fell below an objective standard of reasonableness, and that counsel's "deficient performance" was prejudicial to the petitioner's case.  See Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  To satisfy this second prong, the petitioner must show

that there is a "reasonable probability" that, but for counsel's

errors, the outcome would have been different.  Id. at 694.

> In attempting to demonstrate that appellate
> counsel's failure to raise a state claim
> constitutes deficient performance, it is not
> sufficient for the habeas petitioner to show
> merely that counsel omitted a nonfrivolous
> argument, for counsel does not have a duty
> to advance every nonfrivolous argument that
> could be made.  However, a petitioner may
> establish constitutionally inadequate
> performance if he shows that counsel omitted
> significant and obvious issues while
> pursuing issues that were clearly and
> significantly weaker.

Mayo, 13 F.3d at 533 (internal citation omitted).

The petitioner's appellate counsel submitted a well-

reasoned brief attacking the sufficiency and the weight of the

evidence.  The underlying claims that the petitioner contends

are a basis for an ineffective assistance of counsel claim are

meritless, and appellate counsel should not be deemed

ineffective for failing to raise meritless claims on appeal.

Therefore, the petitioner's claim of ineffective assistance

of appellate counsel provides no basis for granting habeas

relief and the petitioner's claim is denied.


CONCLUSION

For the reasons explained above, the petition for habeas

corpus is **denied**.  Because the petitioner has failed to make a

substantial showing of the denial of a constitutional right, the

22

Court declines to issue a certificate of appealability pursuant

to 28 U.S.C. § 2254(c).  The Clerk of the Court is directed to

enter judgment dismissing the petition and closing this case.

**SO ORDERED.**

**Dated:     New York, New York**
           **May 25, 2010**

_____

John G. Koeltl
United States District Judge